Catron, Ch. J.
It is first insisted that no estate descended to the heir of John Stokes, and that Grundy *347 and Ewing could not acquire any title, unless they had purchased from the same person M’Culloch had previously purchased from.
The purchase of M’Culloch from John Stokes in 1790, did not divest the legal title; the naked fee remained in Stokes the grantee, until registration; on the death of Stokes, this naked fee descended to his heir.
In 1815, John R. Stokes (the heir) sold and conveyed to Grundy and Ewing, who during that year had their deed proved and registered in the proper county. They were innocent purchasers without notice of M’Culloch’s previous purchase, actual or constructive, his, M’Cul-loch’s, deed not being proved and registered until 1821.
Their equity was equal to M’Culloch’s as against Stokes’ heir; he could gainsay neither; when Grundy and Ewing registered their deed, they acquired with their equity the legal title, drew to them the younger equity, the fee, and are protected as innocent purchasers without notice by the general rules governing courts of justice, as well as by the exceptions in the acts ex.tending the time for registering deeds, passed after 1815, especially that of 1820, ch. 1, by virtue of which M’Culloch’s deed was registered. Marshall vs. Booker, decided at Nashville, March term 1820. (a) The younger deed in this instance being fully proved to have been obtained in the manner contemplated by the exceptions in the registry acts, in favor of innocent purchasers, it becomes unnecessary in this case for the court toen' quire, what power the legislative authority has, by extending the time for registering deeds, to divest the legal title vested by the younger, but previously registered deed. Judgment on the case agreed must be entered up for the defendant.
*348 Green, J.
Whether the probate and registration of M’Culloch’s deed were regular, and authorised by law, is not now a necessary enquiry.
The first question arising in relation to Grundy and Ewing’s deed, is as to its probate. It is insisted in argument, that this was irregular, and unauthorized by law. That by the act of 1807, ch. 85, sec. 3, all deeds for land were required to be proved in the county or district where the land lay; except in cases of non-resident bargainors, whose deeds are to be acknowledged or proved in some court of record of some one of the states or territories of the United States, unless it shall have been proved as therein before pointed out. It is insisted that this act was the only one regulating the probate of deeds executed by non-resident bargainors, at the time Grundy and Ewing’s deed was proved; because it is insisted that the act of 1809, ch. 14, (April session) authorizing deeds to be proved in any court of record, does not affect the act of 1807, ch. 83, sec. 3, so far as deeds executed by non-resident bargainors are concerned. That therefore the deed to Grundy and Ewing, having been executed by a citizen of Ohio, if proved in this State, must, to be regular, have been proved in the county or district where the land lies.
This argument seems to be founded on a misapprehension of these acts. The act of 1807, ch. 83, authorizes the probate of a deed executed by a non-resident bargainor, precisely in the same manner as if he had been a citizen of this State; and for the convenience of parties, it further provides the manner in which the probate or acknowledgement may be taken in other states and territories, where the parties find it inconvenient to have the same done in the courts of this State. The act of 1809, ch. 14, authorizes the probate to be made in any court of record; and the 6th section provides, that the probate or acknowledgment in any other state or government shall be the same as that pointed out in *349 the act of 1807, ch. 85, sec. 3. This later provision r.elates, not to probates or acknowledgments of deeds executed by persons who may be citizens of another state, but to probates or acknowledgments which may be taken in another state or government. If the citizen of another state who has executed a deed is here, or if the witnesses are.here, the probate or acknowledgment are to be regulated by the general provisions of the act of 1809; but if to be taken in another state, then the mode of probate, acknowledgment, &c, prescribed by the act of 1807, are to be pursued.
From what has-been said, it is apparent that this deed was well proved, having been proved in. Davidson county court by the subscribing witnesses thereto. I consider also that it was well registered, either in Stuart or Davidson counties. The registration of deeds for lands in the Indian territory was authorized by the act of 1809? ch. 100, to be made in any county in the state; and Stuart county having been declared by the- act of 1803, ch. 68, to embrace the whole territory west of Montgomery clearly by its terms embraced the territory in which these lands were situated; for Montgomery had previously by the act of 1801, ch. 37, been extended to' the Mississippi, including the whole Western District. The Western District being then covered by the Indian title, makes no difference. The-extension of the county of Stuart so as to include it for the purposes’ of registration, was authorized, and could not interfere with the Indian rights, or conflict with the intercourse laws or treaties of the United States. The deed to Grundy and Ewing having then been properly proved and registered in 1815, the title to the land passed and was vested in them; the extension of the time for the probate and registration of deeds by the acts of 1817, 1819 and 1820, by virtue of which M’Culloch’s deed was registered, could not by such subsequent registration affect that title. All these acts contain an express saving in favor of *350 creditors and subsequent purchasers without notice of the prior deed, by which provisions the defendant’s title ⅛ protected against the elder title of M’Culloch. But it is contended that this only applies to cases where the purchase should be made from the same vendor by whom the prior deed was executed. It is true, the subsequent purchaser must hold under the same title; but whether he hold under the ancestor or heir, it can make no difference. The estate is thrown upon the heir with all the rights the ancestor enjoyed, and subject to all the incumbrances he had created on it. The registry acts are intended for the protection of the community from impositions and frauds. If a purchaser, who is not in possession of the land, may keep his deed in his pocket for ten years, concealed from the world, and then produce it, and overreach all other deeds which in the mean time may have been made for the same land, no man would be safe in the purchase of an estate. This mischief would equally exist whether the ancestor or heir continue the apparent legal owner of an estate which had been sold. A subsequent dealer would as readily purchase of the heir as of the ancestor; and the heir would be much more apt to sell, having possibly no knowledge of any previous sale by the ancestor, than that the ancestor knowing he had parted with his estate, would undertake to sell it again. All the reasons therefore, why a deed should be so registered, exist in such a case as the one before us, as exist in any other; and it must be concluded therefore, that the saving in these statutes is intended to apply to it.
Peck, J.
This case turns entirely upon our registration laws. The effect of our acts affording further time for probate and registration, is presented in a new aspect, and must receive consideration. Evenprior to the act of 1715, ch. 38, there must have been provisions concerning the probate of deeds; for in that act, sec. 6, we have a pro *351 vision making good imperfect registrations, and providing a further time for the registration of such deeds as had been previously made, hut not proved and registered. And from 1715 up to 1817, a period of more than one hundred years, renewed provisions were continually enacted in favor of such as might suffer by their deeds and mesne conveyances not having been registered in due time, without a saving in favor of subsequent purchasers. Some care has been taken to collect those acts in detail. They will be found in the laws of 1741, ch. 21: 1756, ch. 6: 1760, ch. 6: 1764, ch. 6: 1766, ch. 4: 1770, ch. 9: 1773, ch. 29, in which year the constitution of North Carolina was framed; and a series of like legislation was continued—1777, ch. 10: 1780, ch. 11, sec. 3: 1782, ch. 5: 1783, ch. 18: 1784, ch. 21: 1786, ch. 20, sec. 6: 1787, ch. 23, sec. 3: 1788, ch. 24: 1794, ch. 22. This act brought us up to the period when the constitution of Tennessee was framed and adopted. A like legislation was commenced in the same year, 1796, ch. 5, and was continued—1797, ch. 42: 1801, ch. 20: 1803, ch. 57: 1809, ch. 14: 1811, ch. 39: 1812, ch. 79: 1813, ch. 81: 1815, ch. 1 and 179: 1817, ch. 45. This act contains this saving in favor of deeds, the time for the registration of which had passed, and such registration, when made, shall be available in law to vest the title from the date of the conveyance, as against the grantor, bargainor, and all 'others who may have purchased with notice of such conveyance, mortgage, or deed of trust.
The act of 1819, ch. 47, sec. 1, extends the time in favor of such deeds for twelve months, with this proviso: “That said registration shall not operate to the injury of creditors or subsequent purchasers.” The first section of this act brings with it the mode of proof provided in previous laws.
By the act of 1820, ch. 1, (July) twelve months is allowed in favor of such deeds; which shall be good and *352 valid, either in law or equity, against all and every person or persons, except those who may have purchased for a valuable consideration, without notice of such prior purchase.
From the preamble to this act, and the provisions in the first and third sections, the mode of proof in previous laws is brought forward and continued.
The act of 1821, ch. 57, sec. 1 and 2, makes good past registrations, and declares they shall be good to pass the estate conveyed, but contains this proviso: “That this act shall not be construed to defeat the rights of creditors, or subsequent bona fide purchasers for a full consideration, without notice of such deed.”
At the time the deed to M’Culloch was registered, there was a saving in favor of subsequent innocent purchasers, for a valuable consideration, without notice.— So far as we can learn, the right to extend the time im-próbate and registration has not been questioned; it was a right exercised before and at the time of framing the constitution of North Carolina; before and since the constitution of the state of Tennessee was framed.— These were the laws of the land; the policy of the country required it. Many of the reasons for such extension of time is found in the acts; irregularities in officers, accidents, misapprehension of the law, neglects and mistakes, are mentioned as reasons. To these may be added the revolutionary war while Tennessee was part of North Carolina, and Indian wars since and before Tennessee became a state. Hence to save rights, frequently to orphans whose parents had been cut off, these registry acts were passed in favor of those “likely to suffer from their deeds not having been registered in time;” terms expressed in most of the acts. The best lands and estates in this country are so held under deeds covered by the acts passed prior to 1817; and in all the legislation and adjudications concerning such estates, their constitutionality has not been called in question. The *353 saving in favor of subsequent purchasers was not inserted, but the elder deed, though last, and out of time registered, helped by the act and made to pass the title. While we consider the time and design of these registry laws, on constitutional principles they cannot, it is believed, be questioned. The intention was as much to preserve the evidence of title in favor of the bona fide first purqhaser, as the registration was to afford notice to the rest of mankind. Nay, a perpetuation of testimony was the main object. To make deeds effectual to pass the estate, where a valuable consideration moved the execution, was as desirable'with the legislature, as it was desirable to guard against deeds fraudulently made. A liberal interpretation of all the acts to effectuate the object has been given to protect the purchaser, anda repetition of these extending laws put men on their guard in making purchases. Other acts went hand and hand with those enumerated, designed to assure the right of a purchaser, as well him in possession as where both the vendor and the purchaser were out of possession.— All our acts of limitation of seven years, and the act of 1805, ch. 11, were passed for the benefit of purchasers for valuable consideration; the first of these acts to maintain the possession held, the latter to give the right and make previous deeds, which were void at common law, good and available to the vendee. To this end the second section of the act of of 1805, ch. 11,. was passed, and made to operate against the person in adverse possession. Strikin g as this section is in making a void deed evidence, it has never been considered an eco post facto law.
None of these acts impair the obligation of contracts; on the contrary, they come in aid of the contract or obligation; from the commencement onward it was the law with its own construction upon it; existing before, at the time, and subsequent to our constitution, each extending act was intended to, and did have the effect of *354 a bill and decree in chancery. To save endless litiga. tion and expense, the mode was adopted and the acts substituted. Their repetition is the very best proof of their approval and binding efficacy amongst those for whose benefit they were made.
Very persuasive reasons, growing out of the relations of the parties, go to show that the acts protecting the elder deed, though the last registered, ought to prevail, rather than the converse'of the proposition. For if both the first and and the last vendees took covenants of warranty for title, none but the latter could be enforced against the warrantor, because the vendee suing upon his warranty, had to aver eviction by elder and better title. This averment rested only with the latter ven-dee. And again, he who took such a covenant of general warranty, is supposed in law to rest upon the ability of the vendor to vouch his title, or compensate in damages; if the deed was without warranty, it presumed a knowledge of a cloud over the title, and that the purchase was an adventure.
It is to be regretted that a necessity for such legislation ever existed; but the necessity did exist, these laws have been passed, and they must receive interpretation. Had they been uniform, and simply afforded relief by giving further time, the constant course of one hundred years would have bound us down to follow the acts; and as I would in that case have had no guide but the acts, I am for the same reason limited by the terms of the acts governing the deeds at the time the elder to M’-Culloch was recorded. If it was constitutional to legislate without exceptions, it was equally so to insert the exceptions in favor of the younger deed. See the case of Marshall vs. Booker, Emmerson’s opinion, (a) The deed to Grundy and Ewing must be preferred.
Judgment affirmed.